**WIGGIN TERMINALS, Inc., v. HASSETT, Collector of Internal Revenue.**

Civil Action No. 451.

District Court, D. Massachusetts.

Jan. 24, 1941.

Lothrop Withington, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit, properly here, to recover, with interest, the sum of $3,213.33 paid by the plaintiff as capital stock taxes assessed for the taxable period ending June 30, 1937, under the provisions of Section 105 of the Revenue Act of 1935, 26 U.S.C. A. Int.Rev.Acts, page 796, 797, the applicable provisions of which appear in the margin.[1]

---

[1] "§ 105 Capital Stock Tax

"(a) For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock.

\* \* \*

"(f) For the first year ending June 30 in respect of which a tax is imposed by this section upon any corporation, the adjusted declared value shall be the value,

## Findings of Fact.

The facts are not in dispute and are as follows:

The plaintiff is a Massachusetts corporation with a place of business in Boston. Under the provisions of Section 105 of the Revenue Act of 1935, for the taxable period ending June 30, 1936, the plaintiff duly filed a capital-stock return in which it declared the value of its entire capital stock as of December 31, 1935, at $500,-000.

On December 14, 1934, the plaintiff filed in the United States District Court for the District of Massachusetts proceedings in reorganization pursuant to the provisions of Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. At the time of filing its petition (and on December 31, 1935), the plaintiff had outstanding $2,397,000 face value first mortgage 5½% bonds, issued under an indenture of mortgage, and was also indebted for interest on said bonds in an amount which, for the purposes of these proceedings, may be taken to be $574,141.42, and was indebted to other creditors in the amount of $43,905.40, which indebtedness was cancelled or adjusted in accordance with the provisions of its plan of reorganization. The plan of reorganization dated January 2, 1936, as revised April 3, 1936, was submitted to the United States Court for the District of Massachusetts. The plan of reorganization provided, inter alia:

"1. Bondholders: There are at present outstanding $2,397,000 principal amount First Mortgage 5½% Bonds issued under Indenture of Mortgage dated as of September 1, 1925, to The National Shawmut Bank of Boston, Trustee, interest on which bonds has been in default since September 1, 1932. The principal and interest represented by these bonds and the coupons thereon will be cancelled and the mortgage discharged by confirmation of this Plan."

The plan, which was in evidence, provided that the holders of the bonds would receive shares of stock for their principal and interest and further provided a 50% payment in cash and notes for the indebtedness mentioned in the preceding paragraph amounting to $43,905.40.

The plan of reorganization was confirmed by the court on May 4, 1936, and on February 16, 1937, a final decree was entered.

As a result of the reorganization proceedings, the claims of bondholders for principal and interest totalling $2,971,141.-42 were discharged, the bondholders receiving shares of stock, and the claims of the other creditors were adjusted on a 50% basis, for $21,952.70, the latter receiving cash and notes, the total being $2,993,094.12.

For the taxable period ending June 30, 1937, the plaintiff filed a capital-stock return in which the adjusted declared value of its capital stock as of December 31, 1936, was set at $362,847.38. This return reflected no part of the $2,993,094.12 referred to above as addition adjustments to the declared value of its capital stock, and it was upon this amount that the Commissioner assessed the additional capital stock taxes, to recover which this suit is now brought.

It is the contention of the Commissioner that $2,397,000 of this amount, i. e., the amount that was paid bondholders for their bonds, should be added in the 1937 return to the original declared value of the capital stock, under the provisions of Section 105 (f) (1), supra, on the ground that the transaction was in effect a sale of shares of stock for cash; that the balance of $596,094.12 should be added, under the provisions of Section 105 (f) (2), supra, "paid in surplus and contributions to capital". The Commissioner contends these were additions to the original declared value of the capital stock which took place during the income-tax taxable year ending December 31, 1936, because of the fact that the plan was confirmed during that year, to wit, May 4, 1936, and consequently, the cancellations were consummated in 1936. On the other hand, it is the contention of the plaintiff that no adjustment of capital stock value resulted from the reorganization proceedings until February 16, 1937, the date of the final decree.

as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section (or as of the date of organization in the case of a corporation having no income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section). For any subsequent year ending June 30, the adjusted declared value in the case of a domestic corporation shall be the original declared value plus (1) the cash and fair market value of property paid in for stock or shares, (2) paid in surplus and contributions to capital, * * *."

Thus, the sole question presented here is what was the adjusted declared value of the plaintiff's capital stock on December 31, 1936, for the purpose of determining the capital stock tax due June 30, 1937?

It is agreed that if the stated amount of $2,993,094.12 is not to be included in the determination of the adjusted declared value of the plaintiff's capital stock as of December 31, 1936, the adjusted value as of that date was $362,847.38, as it appears in the capital-stock tax return of the plaintiff filed June 30, 1937.

## Opinion.

Assuming, though it is not conceded by the plaintiff, that the full amount of the cancellation of indebtedness that took place in the reorganization proceedings constituted "cash paid in for stock or shares" (Capital-Stock Tax Return, Schedule I, (1) (a) ) or "Paid-in surplus and contributions to capital" (Schedule I, (2) ), we come immediately to the question as to when these cancellations took place; whether on May 4, 1936, the date of the confirmation of the plan, which was within the income-tax taxable year of 1936, or on February 16, 1937, the date of the final decree in the reorganization proceedings, which was without the income-tax taxable year with which we are concerned.

It is obvious that a decree entered by the court May 4, 1936, did not terminate the reorganization proceedings of the plaintiff. It was possible for many things to happen in connection with them after the confirmation of the plan. Section 77B, sub. g, provides on confirmation of the plan, that the debtor, stockholders, and creditors shall be bound by it, but a little study will determine that this is so only in the event the plan is finally consummated. It may be that a plan in reorganization proceedings may turn out to be an absolute nullity. There have been numerous instances where plans have been confirmed by the court in proceedings under this section of the Bankruptcy Act and confirmation of the plan later revoked on petition of the debtor or other interested parties, and the estate liquidated in straight bankruptcy. Cf. Section 77B, sub. c (8). These instances have arisen where the debtor was unable to carry out the provisions of the plan after confirmation. Under the Bankruptcy Act of 1938 there is an express provision that "if a confirmed plan is not consummated" the judge shall either dismiss the proceedings or direct that bankruptcy be proceeded with. Chapter X, Section 236 (1) and (2), 11 U.S.C.A. § 636 (1, 2). Section 77B, sub. f (7), provides, in part, that before or after a plan is confirmed changes and modifications may be proposed by any party in interest and may be made with the approval of the court. Such a procedure as this might result in no confirmation of a plan whatsoever if ,enough acceptances of the creditors or stockholders are withdrawn under the provisions of this section and finally not secured. Section 77B, sub. h, gives the court authority to enter a final decree "upon the termination of the proceedings" discharging the debtor from its debts and liabilities and terminating and ending all rights of the stockholders. It seems that "upon the termination of the proceedings", as it appears in Section 77B, sub. h, means, "upon the consummation of the plan". The court.in its decree confirming the plan in the reorganization proceedings of the plaintiff ordered, "that the Debtor shall have full power * * * to, and shall put into effect and carry out the Plan" and "that the property dealt with by the Plan shall 'upon the consummation of the Plan' be free and clear of all claims and interests of creditors and stockholders of the Debtor * * *." Congress in revising Section 77B, sub. h, in the Bankruptcy Act of 1938 changed the language, "Upon termination of the proceedings * * *" to "Upon the consummation of the plan, the judge shall enter a final decree—(1) discharging the debtor from all its debts * * *". Chapter X, Section 228, 11 U.S.C.A. § 628.

From this, it would appear that the effective date of the discharge of the indebtedness was as of the date of the final decree.

## Conclusions.

It is my conclusion that the cancellation of the plaintiff's indebtedness took place and was consummated by the final decree entered by the court on February 16, 1937. This indebtedness was outside the income-tax taxable year ending December 31, 1936, and the amounts included in the cancellation of indebtedness need not have been included in the determination of the adjusted declared value of the plaintiff's capital stock as of December 31, 1936. The adjusted value calculated by the plaintiff in its return, to wit, $362,847.38, was correct, and hence judgment must be entered for the plaintiff in the sum of $3,213.33, with costs and interest according to law.